# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| SHANNON E. SPARKS, | : Case No. 3:17-cv-00034 |
| Plaintiff, | : District Judge Thomas M. Rose |
| vs. | : Magistrate Judge Sharon L. Ovington |
| NANCY A. BERRYHILL, Commissioner of the Social Security Administration, | : |
| Defendant. | : |

# REPORT AND RECOMMENDATIONS[1]

## I.     Introduction

Plaintiff Shannon F. Sparks brings this case challenging the Social Security Administration's decision to deny her applications for Disability Insurance Benefits and Supplemental Security Income. The Social Security Administration denied her applications mainly through the decision of Administrative Law Judge (ALJ) Gregory G. Kenyon, who concluded that Plaintiff was not under a benefits-qualifying disability.

This case is presently before the Court for review of ALJ Kenyon's decision by way of Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #3).

## II.    Background

On November 1, 2012, the date Plaintiff's asserted disability began, she was 34

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

years old. She was thus considered to be a "younger person" under social security regulations. 20 C.F.R. §§404.1563(c), 416.963(c).[2] She has a high-school education. She worked over the years as a short-order cook, packager, counter clerk, and quality-assurance inspector.

Before issuing his non-disability decision, ALJ Kenyon held a hearing during which Plaintiff testified. She informed ALJ Kenyon that she lives in a house with her brother, his wife, and their two children. She does not leave the house unless she has to. She does not go grocery shopping or to Wal-Mart.

Plaintiff has been diagnosed with bipolar disorder and anxiety disorder. She explained that she has experienced mood swings since age 14 or 15. She has trouble with irritability and controlling her temper. She argues with her brother and he is the only person "able to put up with [her] on a regular basis." (Doc. #3, *PageID* #64). She lacks friends to socialize with and she gets panic attacks if she leaves home and is around others. Her panic attacks make her vomit. She explained:

> It's like somebody's sitting on your chest, like, you can't catch your breath. Like, or the constant feeling like you're going to just jump out of your skin. I had to pull over three times on the way here from Springfield to throw up. And I have my mom with me today. She's the most comfortable— the person I'm most comfortable with, and I still had to pull over and get sick three times just coming here today. And I literally feel like I'm about to jump right out of my skin sitting here. I just want to go home.

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

*Id*. at 65.  She usually takes Ativan and uses breathing techniques to help calm herself.  She also has nightmares and night terrors.  If she wakes up from a "real bad one" she has a panic attack.  *Id*. at 66.  She testified that this happens ten to twelve times a month.  She describes her panic attacks when she leaves the house as "major ones."  *Id*.

Plaintiff testified that she cries daily.  When asked about how many times each day, she answered:

> I mean, it just depends.  I don't know how to explain it.  It goes up and down.  Like, I don't know how to explain it.  I'll go for three or four days and I can't sleep.  It makes me emotional and irritable, aggravated.  Then, I'll have days and weeks that I don't want to get out of bed, and—all I do is cry, and I don't want to talk to anybody….

*Id*. at 67.  She estimated she has crying episodes a couple of times per week.  She sleeps for only 1½ to 2 hours a night and does that for 1 or 2 weeks.  She can be awake for days without being tired.

Plaintiff indicated that she has trouble concentrating and has difficulty multitasking.  She's distracted by what is happening around her.  She stays in contact with family members by using Facebook.  She views their photos but does not engage with them.  She "can't stay focused on it for very long."  *Id*. at 70.  She uses Facebook about 1 hour a day.

Plaintiff testified that she was assaulted in 2013 and has experienced paranoia since that incident.  She feels like she is not safe anywhere.  She can't trust others.  She has "weekly[,] daily" flashbacks to the assault.  *Id*. at 72.

She's had difficulty with alcohol in the past but has not drunk alcohol since 2012.

*Id*. at 76.  Her hobbies include listening to music and writing poetry.  She explained that she cannot do a full-time job because as she has gotten older, she "can't deal with the outside world anymore…." *Id*. at 79.

### III. Medical Evidence

The record does not contain an opinion by a treating psychiatrist or psychologist.  It does, however, contain psychological progress notes and other mental-health treatment and assessment information from March 2010 to October 2013.  *Id*. at 478-523.  Records also describe Plaintiff's emergency room care in 2013.  *Id*. at 524-558.  These include a note in September 2013 reporting that Plaintiff and two others "had been out drinking." *Id*. at 534.  Plaintiff also received mental-health treatment from January 2014 to late April 2014.  *Id*. at 573-94.  She had previously received mental-health treatment before her disability onset date.  *Id*. at 596-653.

In January 2014, psychologist Karla Voyten, Ph.D. evaluated the evidence concerning Plaintiff's mental-health impairments.  She concluded that Plaintiff was moderately limited in her ability (1) to work in coordination with, in proximity to, others without being distracted by them; and (2) complete a normal workday and workweek without significant interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  (Doc. 3, *PageID* #98).  Dr. Voyten explained that Plaintiff's symptoms of bipolar disorder, personality disorder, and panic "may limit her ability to attend to complicated tasks.  She can follow simple, repetitive tasks at her own pace without strict time/production quotas." *Id*.

Dr. Voyten also found that Plaintiff was markedly limited in her ability to interact with the general public. She noted that Plaintiff has symptoms "consistent with agoraphobia. She is able to go shopping for essentials a couple of times per month and she states that she went out drinking with friends in September 2013 (Mercy Hosp. Records). She is not well suited for a job that requires interaction with the public. She can interact with coworkers and supervisors on occasion, in a superficial manner." *Id*. Additionally, Dr. Voyten believed that Plaintiff was not significantly limited in several areas, for example, her ability to accept instructions and respond appropriately to criticism from supervisors and her ability to maintain socially appropriate behavior…." *Id*.

In July 2014, psychologist Paul Tangeman, Ph.D. reviewed the record and essentially agreed with Dr. Voyten's earlier assessment. *Id*. at 136-37.

## IV. "Disability" and The ALJ's Decision

To be eligible for Disability Insurance Benefits or Supplemental Security Income a claimant must be under a "disability" as the term is defined by the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same both types of benefits. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job, and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See id.* at 469-70.

5

As noted previously, it fell to ALJ Kenyon to evaluate the evidence pertinent to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the social security regulations. *See* 20 C.F.R. §404.1520. His pertinent findings began at Step 2 with his determination that Plaintiff had 4 severe physical impairments: lumbar strain, diabetes, mild chronic pulmonary disease, and obesity. (Doc. #3, *PageID* #35). He further found at Step 2 that Plaintiff had three severe mental impairments: bipolar disorder, an anxiety disorder, and a history of substance abuse. *Id.*

The ALJ concluded at Step 3 that Plaintiff did not have an impairment or combination of impairments that automatically entitled her to benefits under the Commissioner's Listings. *Id.* at 36; *see* 20 C.F.R. Part 404, Subpart P, Appendix 1.

At Step 4, the ALJ determined that despite Plaintiff's impairments, she retained the ability—her residual functional capacity—to perform a limited range of light work, with both physical and mental work limitations. The latter included limitations to unskilled, simple, repetitive tasks; occasional superficial contact with coworkers and supervisors; no public contact; no jobs involving teamwork or tandem tasks; no jobs involving sales transactions or negotiations; no fast-paced-production work or jobs involving strict-production quotas; and relatively static work environment in which there is very little, if any, change in job duties or the work routine from one day to the next. (Doc. #3, *PageID*#38).

The ALJ also concluded at Step 4 that Plaintiff could not perform her past relevant work. At Step 5, the ALJ found that Plaintiff could perform a significant number of jobs that exist in the national economy, and that she was, therefore, not under a disability. *Id.*

6

at 44-46.

## V. Judicial Review

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance...." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

7

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## VI. Discussion

### A. The Medical Evidence

Plaintiff contends that the ALJ erred by improperly finding that she had only "moderate" limitations resulting from her mental impairments. She emphasizes that Drs. Voyten and Tangeman opined that she had "marked" limitations in her ability to maintain social functioning and further contends that the ALJ's reasoning for rejecting their opinions was flawed.

The Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. §§ 404.1527(b), (c). In deciding how much weight to assign an opinion, an ALJ must consider the following factors: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *See id.* at § 404.1527(c). "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." *Id.* at §404.1527(e)(2)(ii).

With respect to her mental impairments, the ALJ reasonably found that Plaintiff retained the mental residual functional capacity to perform unskilled, simple, repetitive

8

tasks; with occasional superficial contact with coworkers and supervisors and no public contact; no jobs involving teamwork or tandem tasks; no jobs involving sales transactions or negotiations; no fast-paced production work or jobs involving strict production quotas; and jobs in a relatively static work environment with very little, if any, change in the job duties or the work routine from one day to the next. (Doc. #3, *PageID* #38). In finding Plaintiff able to perform these limited tasks, the ALJ assessed the relevant evidence—medical and otherwise—and considered the impact Plaintiff's combined impairments had on her ability to work. In this manner, the ALJ applied the correct legal criteria. *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a). The ALJ reasonably concluded that Plaintiff had some limitations as a result of her mental impairments but that the record evidence, including the fact that the record does not contain a contrary treating source opinion, did not support Plaintiff's alleged disabling limitations but instead supported the mental limitations the ALJ described in his assessment of her residual functional capacity. *See* Doc. #3, *PageID* #s 41-44.

In evaluating Plaintiff's allegations, the ALJ recognized that she had a significant mental-health history characterized by bipolar symptoms and difficulty controlling her anger. The ALJ found, however, that the objective evidence failed to support more than moderate symptoms. *Id*. at 41. Substantial evidence supports this finding. For example, the ALJ reasonably noted that Plaintiff sought treatment on November 28, 2012, after not having received treatment since 2010. *See id*. at 41, 485. The ALJ correctly acknowledged that at times (through October 2013) Plaintiff exhibited symptoms, including depressed, angry and/or anxious moods, defensive affect, hostile behavior,

9

pressured speech, agitated motor activity and limited insight and judgment. Substantial evidence supports the ALJ's analysis that despite these symptoms, Plaintiff's records show she frequently had unremarkable or normal findings, such as appropriate affect, coherent thought processes, unremarkable thought content, normal motor activity, a cooperative attitude, normal speech, intact memory, and good insight. *See id*. at 41, 483, 487, 496, 499, 501, 516-17, 519, 521-23. The ALJ also reasonably observed that other treatment reports primarily documented Plaintiff's subjective complaints and demonstrated Plaintiff's non-compliance with treatment and taking medication as prescribed. *See id*. at 41; *e.g.*, 519, 575-93). And, examination and progress notes in 2015 consistently documented normal mental status findings, as the ALJ properly recognized. *See id*. at 41; *e.g.*, 536, 549, 565, 570-71, 657, 671, 679, 680, 728, 750, 792.

The ALJ also correctly considered that despite Plaintiff's impairments and alleged symptoms, the record demonstrated that her social activities were inconsistent with disabling limitations, including using going "out drinking" with friends, living with her brother and his family, and getting a ride when she needed to go somewhere. *See* 20 C.F.R. § 404.1529(c)(3)(i) (ALJ may consider a claimant's daily activities in evaluating the severity of symptoms). Substantial evidence supports this view of the record. *See* Doc. #3, *PageID* #s 39, 42; *e.g.*, 58, 439, 486, 582-83, 587. Additionally, in assessing Plaintiff's subjective complaints, the ALJ properly considered Plaintiff's inconsistent statements. *Id*. at 42; *see* 20 C.F.R. § 404.1529(c)(4) (explaining that the ALJ will consider whether there are inconsistencies in the evidence and any conflicts between the claimant's statements and the other record evidence in determining the extent to which

the claimant's symptoms diminish her capacity for basic work activities). The ALJ then pointed to substantial supporting evidence, noting that, in November 2013, Plaintiff reported she did not drive due to panic attacks, while during the ALJ's hearing she testified she had not had a license since it was suspended in 2009. (Doc. #3, *PageID* #s 41, 58-59, 326). Plaintiff also stated that, generally, she did not leave home except to attend medical appointments or shop. *Id*. at 59, 64-65, 326-29. In contrast, the record indicates that she acknowledged several times that she socialized (went out drinking) with friends. *Id*. at 439, 441, 465, 582, 587. For instance, during a counseling session on April 7, 2014, Plaintiff "reports leaving the house often and drinking with friends." *Id*. at 582. The ALJ also reasonably found that Plaintiff's inconsistent statements about her polysubstance use was another reason to discount her assertions and that the information she provided regarding her subjective complaints may not be reliable. *See id*. at 42; *e.g*., 431, 487, 493-94, 679. Plaintiff's inconsistent statements undermined her reports of disabling limitations, and the ALJ properly considered them along with the other record evidence.

Plaintiff's challenges to the ALJ's decision not to credit the marked limitations identified by Drs. Voyten and Tangeman lack merit. As noted previously, both these psychologists found that Plaintiff had a marked limitation in her ability to interact with the public. The ALJ essentially accommodates this marked limitation by including in his assessment of Plaintiff's residual functional capacity, "no public contact" and no jobs involving sales transactions or negotiations." *Id*. at 38. Even if the ALJ had found that Plaintiff had a marked limitation in her ability to interact with the public, this would not

11

have required the ALJ to find Plaintiff disabled under the Listings because such a marked limitation by itself does not satisfy the "B criteria" needed to satisfy the Listings for a mental disorder. *See* Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, §12.00; *see* 20 C.F.R. § 404.1525(d) (In order to be meet a Listing-level impairment, and thus be found disabled, the claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing.").

Accordingly, the ALJ applied the correct legal criteria to determine whether Plaintiff was under a disability and substantial evidence supported the ALJ's findings.

### B. The Vocational Expert

Plaintiff argues that the ALJ erred in failing to fully consider the vocational expert's testimony. She explains that the ALJ posed a hypothetical question to the vocational expert that accurately included no interpersonal contact with co-workers, supervisors, or the public. The vocational expert testified that this restriction (together with the previous restrictions the ALJ described) would preclude all competitive employment. (Doc. #3, *PageID* #s 84-86). Plaintiff also points out that a limitation of two days per month would also be work preclusive. *Id*. at 86. Plaintiff maintains that evidence of record supported these additional restrictions and, therefore, the ALJ erred by neglecting to credit this part of vocational expert's testimony.

After properly assessing Plaintiff's residual functional capacity, the ALJ then relied on the vocational expert's testimony to find that Plaintiff could perform other work in the national economy. *Id*. at 45-46. The hypothetical questions the ALJ asked the vocational expert included Plaintiff's vocational characteristics and limitations the ALJ

12

included in Plaintiff's residual functional capacity. *See id*. at 38, 84-86. It was, therefore, not error for the ALJ to rely on the vocational expert's testimony that considered the limitations identified in his assessment of Plaintiff's residual functional capacity, particularly when the ALJ's assessment accurately reflected the impact of Plaintiff's impairments. *See Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994) (vocational-expert "testimony must be given in response to a hypothetical question that accurately describes the plaintiff in all significant, relevant respects….").

Accordingly, the ALJ did not err in relying on the vocational expert's testimony.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision on December 17, 2015 be affirmed; and
2. The case be terminated on the docket of the Court.

February 8, 2018                                         *s/Sharon L. Ovington*
                                                         Sharon L. Ovington
                                                         United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).